UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SCOTT A. SITZER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:17-CV-1969 NAB |
| | ) |
| ANDREW M. SAUL[1], | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Scott A. Sitzer's appeal regarding the denial of disability insurance benefits under the Social Security Act. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 11.] The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

**ISSUES FOR REVIEW**

Sitzer presents two issues for review. Sitzer asserts that the administrative law judge ("ALJ") failed to make a proper credibility determination and the residual functional capacity ("RFC") determination is not supported by substantial evidence in the record as a whole. The

---

[1] At the time this case was filed, Nancy A. Berryhill was the Acting Commissioner of Social Security. Andrew M. Saul became the Commissioner of Social Security on June 4, 2019. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Andrew M. Saul for Nancy A. Berryhill in this matter.

Commissioner contends that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

## STANDARD OF REVIEW

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's RFC to perform past relevant work. 20 C.F.R. § 404.1520(e). Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). The Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003).

## DISCUSSION

**Credibility**

Sitzer asserts that the ALJ failed to discuss why he was not credible, identify what symptoms were found credible, and why some symptoms were found inconsistent with the evidence. Sitzer also asserts that the ALJ did not consider the side effects of his medication. In considering subjective complaints, the ALJ must fully consider all of the evidence presented, including the claimant's prior work record, and observations by third parties and treating examining physicians relating to such matters as:

(1) The claimant's daily activities;

> (2) The subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) Any precipitating or aggravating factors;
>
> (4) The dosage, effectiveness, and side effects of any medication; and
>
> (5) The claimant's functional restrictions.

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). It is not enough that the record contains inconsistencies; the ALJ is required to specifically express that he or she considered all of the evidence. *Id.* The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors. *Id.* Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988). "While the extent of daily living activities does not alone show an ability to work, such activities may be considered along with other evidence when evaluating a claimant's credibility." *Walker v. Colvin*, 124 F.Supp. 3d 918, 936 (E.D. Mo. 2015).

The ALJ discussed Sitzer's medication several times in the opinion and stated that he considered Sitzer's subjective complaints and the side effects of medication. (Tr. 21-23.) The record as a whole also indicates that Sitzer's medication regimen was stable and he reported no side effects at most of his mental health appointments (Tr. 1596, 1613, 1627, 1636, 1644, 1646, 1649, 1652, 1654, 1655, 1657, 1660, 1663). There were a few medication adjustments (outside of his hospitalizations), which the ALJ noted. (Tr. 1589, 1599, 1615, 1620, 1669.)

Next, the ALJ sufficiently discussed Sitzer's credibility in the opinion. All of the factors identified by the ALJ can be considered when making a credibility determination. The ALJ discussed Sitzer's testimony regarding his symptoms and functional limitations. (Tr. 17-20.) The ALJ then discussed the reasons why Sitzer's testimony was inconsistent with the record as a whole.

4

The ALJ noted that many of Sitzer's mental health examinations were normal. (Tr. 20.) The ALJ also noted that the objective record indicated that his physical impairments were non-severe, because imaging indicated a normal shoulder and only mild degenerative changes of the cervical spine. (Tr. 21-22.) Sitzer also did not list any current pain medication for his shoulder impairment. (Tr. 21-22.) *See Wildman v. Astrue,* 596 F.3d 959, 965 (2010) (an impairment controlled by treatment or medication cannot be considered disabling); *Moore v. Astrue,* 572 F.3d 520, 524-25 (8th Cir. 2009) (appropriate for ALJ to consider conservative or minimal treatment in assessing credibility). Therefore, the ALJ's comparison of Sitzer's testimony with the objective medical evidence was proper. *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (ALJ can disbelieve subjective complaints if there are inconsistencies in the evidence as a whole and lack of corroborating evidence is just one of the factors the ALJ considers).

The ALJ noted that Sitzer admitted in his testimony that he lied to multiple providers and his wife about attending college classes. (Tr. 20.) The ALJ also noted that Sitzer told his case worker that he might need to be hospitalized to help his disability claim. (Tr. 21.) *See Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008) (If an ALJ explicitly discredits a claimant's testimony and gives good reasons for doing so, deference is given to the ALJ's credibility determination). The ALJ then described several reasons that indicate Sitzer is able to perform work that is substantial gainful activity. The ALJ noted that Sitzer regularly went to the Independence Center and constantly looked for work. The ALJ noted that Sitzer was independently able to go to AA meetings and doctor's appointments. (Tr. 21.) Sitzer's case workers indicated that he met many of his goals at the Independence Center, including obtaining stable housing, maintaining sobriety, and successfully utilizing community resources. (Tr. 21.) "If the ALJ discredits a claimant's credibility and gives a good reason for doing so, [the court] will defer to its judgment even if every

5

factor is not discussed in depth." *Perkins*, 648 F.3d at 900. A review of the entire record demonstrates that the ALJ did not rely solely upon any one of the factors in the credibility analysis. Considering the combination of the factors relied upon by the ALJ and the record as a whole, substantial evidence in the record supports the ALJ's credibility findings.

**Residual Functional Capacity**

Sitzer also asserts that the RFC determination is not supported by substantial evidence. The ALJ found that Sitzer had the severe impairments of bipolar II disorder, attention deficit hyperactivity disorder, and substance abuse disorder. (Tr. 16.) He also determined that Sitzer had the RFC to perform a full range of work at all exertional levels with the following exceptions: (1) no exposure to unprotected heights; (2) only simple, routine tasks in a low stress job; defined as having only occasional decision making and only occasional changes in the work setting; (3) only occasional interaction with the general public so long as the contact is brief and superficial; (4) only occasional interaction with co-workers so long as such contact is brief and superficial; and (5) only occasional supervision. (Tr. 19.) The RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(a). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[2] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall*, 274 F.3d at 1217. An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox*, 471 F.3d at 907.

---

[2] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

6

Sitzer contends there is absolutely no explanation for the ALJ's conclusion that he is able to work at a level of substantial gainful activity. Sitzer contends that his inability to hold part-time jobs during the alleged period of disability indicate that he is unable to work on a full-time basis consistently. Sitzer also states that the ALJ does not have a medical opinion supporting the RFC. Further, Sitzer asserts that the ALJ misunderstood the statements by his psychiatrist Dr. A. Benjamin Srivastava, discounted the opinion of the state agency psychologist, and failed to properly consider the opinions of his case workers.

The ALJ's opinion details Sitzer's testimony, the medical evidence before, during, and after his alleged onset date and the date last insured, and Sitzer's activities of daily living. (Tr. 17-23.) The ALJ did not mention the multiple jobs that Sitzer obtained and then quit during the alleged period of disability. The evidence indicates, however, that Sitzer was able to successfully locate, interview for, and obtain full and part time employment during the time period. (Tr. 1233-1297, 1386, 1394-98.) Further, according to the notes from Sitzer's case workers, his jobs ended because there was no more work available, he despised telemarketing work due to long hours and stress, he had no plans to stay at the job long term, he did not want to stand for 8 hours as a dishwasher, and he had moved far away from his job at the Justice Ministry. (Tr. 1241, 1246, 1255, 1294, 1386.) The fact that Sitzer stopped working due to other reasons can be considered in determining disability. *See Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) (the ALJ may consider that claimant left work for reasons other than a medical condition); *Browning v. Sullivan*, 958 F.2d 817, 823 (8th Cir. 1992) (claimant working until company closed despite limitations supports ALJ's finding of non-disability).

The ALJ discounted negative opinion evidence from the state agency psychologist Dr. Charles Watson. Dr. Watson opined that Sitzer's primary problem was alcohol abuse and that his

medically determinable impairments would improve to the point of non-disability without drug and alcohol abuse. (Tr. 123.) The ALJ found that Dr. Watson's opinion should be given little weight, because Dr. Watson did not have access to Sitzer's treatment records from Barnes-Jewish Hospital. (Tr. 22.) Therefore, the ALJ endorsed a more restrictive RFC that included limitations regarding contact with supervisors, co-workers, and the public in a low stress environment. (Tr. 22.) The ALJ also gave little weight to the portions of Dr. Srivastava's treatment notes where he opined that "there is absolutely no reason why [claimant] cannot work, yet is filing for disability." (Tr. 1599, 1602, 1609.) The ALJ discounted Dr. Srivastava's opinion to the extent that it expressed an opinion regarding Sitzer's disability determination, which is a determination reserved to the Commissioner of Social Security. (Tr. 22.) *See* 20 C.F.R. § 404.1527(d)(1). The foregoing indicates that the ALJ discounted the opinion evidence that was not favorable to Sitzer.

Sitzer also contends that because the ALJ did not obtain an "expert opinion," the RFC determination is not supported by medical evidence. "In the absence of medical opinion evidence, medical records prepared by the most relevant treating physicians can provide affirmative medical evidence supporting the ALJ's residual capacity findings." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). There is no requirement that an RFC finding be supported by a specific medical opinion. *Id.* Sitzer's medical record is voluminous and covers a significant time period before and after his alleged onset date and date last insured. Because the medical record was adequately developed, the ALJ was not required to obtain a consultative examination or medical expert testimony. *See Hensley*, 829 F.3d at 932 (citing *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 372 (8th Cir. 2016)).

Finally, the ALJ did not err in giving little weight to the opinions of his case workers. The ALJ gave the opinions little weight, because the case workers were not acceptable medical sources

8

and their opinions were generally inconsistent with the objective medical evidence and his treating psychiatrists.

> Social Security separates information sources into two main groups: *acceptable medical sources* and *other sources.* It then divides *other sources* into two groups: *medical sources* and *non-medical sources. Acceptable medical sources* include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists. According to Social Security regulations, there are three major distinctions between acceptable medical sources and the others: (1) Only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment, (2) only acceptable medical sources can provide medical opinions, and (3) only acceptable medical sources can be considered treating sources,

*Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (emphasis in original) (internal citations omitted). Medical sources include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists." 20 C.F.R. § 404.1513(d)[3]. "Information from these other sources cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose." SSR 06-03P, 2006 WL 2329939. Further, these other sources are not entitled to controlling weight. *LaCroix v. Barnhart*, 465 F.3d 881, 885-86 (8th Cir. 2006).

"[I]nformation from such other sources, [however], may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function. *Id.*; 20 C.F.R. § 404.1513(d). "Evidence provided by 'other sources' must be considered by the ALJ; however, the ALJ is permitted to discount such evidence if it is inconsistent with the evidence in the record." *Lawson v. Colvin*, 807 F.3d 962, 967 (8th Cir.

---

[3] Many Social Security regulations were amended effective March 27, 2017. Per 20 C.F.R. §§ 404.614, 404.1527, 416.325, 416.927, the court will use the regulations in effect at the time that this claim was filed on November 21, 2014.

2015); *see also Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (in determining what weight to give to other evidence, the ALJ has more discretion and is permitted to consider any inconsistencies found within the record). Therefore, the ALJ is required to consider Sitzer's providers' opinions in evaluating his impairments.

In this case, Sitzer's Independence Center case workers completed a "Daily Living Activities (DLA-20) form" regarding Sitzer. The form rated Sitzer on 20 different activities of daily living, for example, communication, family relationships, productivity, and grooming. (Tr. 1420-31.) The form is a checklist that rates the client from extremely severe impairment to no impairment. The form is then scored and calculated as a modified global assessment of functioning. Sitzer's case workers rated him in the moderate to moderately severe impairment range across the 20 categories with a few exceptions between February 2015 to August 2015. Substantial evidence supports the ALJ's conclusion that these assessments should be given little weight. The DLA 20-Form was conclusory and contained no narrative elements to support the ratings given by the case workers. "The checklist format, generality, and incompleteness of the assessments limit the assessments' evidentiary value." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) (citing *Holstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001)). Also, the objective evidence in the record indicated that between February 2015 and August 2015, Sitzer quit and then obtained a job, began taking classes at the community college, secured housing, applied for health insurance, regularly attended AA meetings, and maintained these resources without substantial involvement from the Independence Center. Therefore, the ALJ did not err in his consideration of the case workers' assessments.

## Conclusion

The Court finds that substantial evidence supports the ALJ's decision as a whole. As noted earlier, the ALJ's decision should be affirmed "if it is supported by substantial evidence, which does not require a preponderance of the evidence but only 'enough that a reasonable person would find it adequate to support the decision,' and the Commissioner applied the correct legal standards." *Turpin v. Colvin*, 750 F.3d 989, 992-993 (8th Cir. 2014) (internal citations omitted). Therefore, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. [Docs. 1, 20.]

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of August, 2019.